***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and oral arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Commission which has jurisdiction over the parties and the subject matter.
2. On all relevant dates, an employer-employee relationship existed between plaintiff-employee and defendant-employer.
3. On all relevant dates, defendant-employer was self-insured, with claims administered by Gallagher Bassett Services.
4. Plaintiff was hired by defendant-employer as an Emergency Medical Technician on 22 August 2005.
5. Plaintiff contends that she was injured on January 27, 2006, as the result of lifting a very heavy patient with coworkers.
6. Subsequent to January 27, 2006, plaintiff missed some work and then returned to light duty work for approximately one month with said work being accommodated by defendant-employer.
7. Plaintiff continued to work for defendant-employer at full duty until
June 3, 2006.
8. Ms. Janet Welch, plaintiff's mother, who had been in regular contact with plaintiff during the time following the injury of January 27, 2006, and who had shared the apartment in which plaintiff resides since about July 2006, was tendered as a witness by plaintiff to confirm that plaintiff had continued to suffer pain and had problems with her right arm, hand and shoulder, after she returned to full duty work in March 2006; and also that plaintiff continued to experience significant pain and problems up through the date of the hearing before the Deputy Commissioner, and had difficulty in engaging in many activities of daily life such as *Page 3 
doing the wash or cleaning. Defendants accepted the tender of Ms. Janet Welch for those purposes, and she did not actually testify.
9. Defendants have now accepted this matter as a medical only claim for a right pectoral/chest strain.
10. At the hearing before the Deputy Commissioner, the parties submitted the following:
 a. A Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2);
 b. A Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (3), and;
 c. Two Documents from Plaintiff's Personnel File, which were admitted into the record and marked collectively as Stipulated Exhibit (4).
11. The issues before the Commission are as follows:
 a. Whether plaintiff neck and upper body conditions are causally related to her January 27, 2006 injury and if so, to what indemnity and medical benefits, if any, is she entitled;
 b. What is plaintiff's correct average weekly wage; and
 c. Whether plaintiff is entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT *Page 4 
1. Plaintiff was thirty-seven years of age at the time of the hearing before the Deputy Commissioner. She graduated from the paramedic program at Forsyth Technical Community College in August 2005.
2. Plaintiff had not yet received her State issued EMT Paramedic certification when she began working for the defendant-employer, so she was hired and paid as an EMT-Basic at $8.24 per hour. Plaintiff received her State paramedic certification in September 2005 and she received a pay increase to $10.09 per hour as an EMT-Paramedic, which was effective on September 10, 2005.
3. Defendant-employer's paramedics are scheduled to work regular shifts of twenty-four (24) hours. They work a shift pattern of one full twenty-four (24) hour day on, and two days off.
4. As a paramedic, plaintiff's duties required her to perform strenuous activities, including carrying equipment, responding rapidly, lifting patients, carrying and lifting stretchers out of the ambulance, lifting patients onto the stretcher, carrying or lifting stretchers with patients downstairs, supporting and lifting stretchers with patients as the stretcher is placed in the ambulance, and supporting and lifting stretchers when patients are removed from the ambulance.
5. On January 27, 2006, plaintiff was dispatched in an ambulance with Mr. Mark Harris to a call involving a person who weighed approximately six-hundred (600) pounds. The patient was on the floor and was unable to get off the floor and back into their bed. Because of the size of the patient, assistance from another EMS crew was requested. Upon the arrival of the second two-person EMS crew, which also had a paramedic student on board, the five emergency medical technicians proceeded to put the patient back into the bed. To do this, a large tarp with *Page 5 
handles fixed around the perimeter was utilized. The tarp was placed under the patient, and then the EMT's in unison lifted the patient up and onto the bed.
6. After being lifted onto the bed, the patient was towards the edge and not properly situated. In order to move the patient towards the center of the bed, plaintiff climbed onto the bed because the bed was located against a wall making it impossible to get to its other side. For her part in maneuvering the patient, plaintiff stood on the bed and kneeled down, attempting to lift with her legs while grasping the handle of the tarp with both hands. When the emergency medical technicians lifted and slid the patient across the bed, plaintiff testified that she exerted great force, in part because she was the only person on the wall side of the bed.
7. Following the performance of this task, plaintiff experienced the immediate onset of a burning sensation in her right upper chest and shortly thereafter, the onset of tingling and numbness in her right arm into her right hand.
8. Plaintiff reported her injury and symptoms to Mr. Harris, who informed her to report her condition to their supervisor, Captain Mark Hege. Plaintiff also completed an Employee Injury/Illness Report.
9. After reporting her injury and symptoms to her supervisor, plaintiff was directed to PrimeCare, where she exhibited symptoms of a burning type pain in her right upper chest wall near her shoulder, with a tingling sensation down her entire right arm and over her fingertips. Plaintiff was also experiencing weakness in her right arm and hand. For her symptoms, plaintiff was prescribed Vicodin for pain, Flexeril, a muscle relaxant, as well as steroids. Additionally, plaintiff was medically excused from work for nine days, and then released to return to light duty work as of February 6, 2006. *Page 6 
10. During the time that she was medically excused from work and during the four weeks while she worked light duty, plaintiff did not receive any indemnity compensation from defendants. Instead, plaintiff was forced to use holiday time that she had accrued so that she would be paid what defendant-employer viewed as her full salary, as if she had worked her regularly scheduled shifts.
11. Prior to her January 27, 2006 injury by accident, plaintiff often worked extra shifts. In November and December 2005, there were weeks in which plaintiff worked more than ninety (90) hours. While on light duty following receiving what defendant-employer viewed as her full salary, plaintiff actually earned less wages than she had prior to her injury. Because of her diminished wages, plaintiff had a credible financial need to return to full-duty work and her pre-injury wage earning level.
12. Subsequent to her initial medical treatment at PrimeCare, the burning pain in plaintiff's right chest wall resolved, but the numbness and tingling in her right arm, particularly in her right hand, grew worse. On February 27, 2006, plaintiff returned to PrimeCare, at which time she reported to a physician's assistant that her symptoms had fully resolved. However, this report by plaintiff was not entirely accurate, but was instead made so that she could return to her pre-injury wage earning level.
13. On February 27, 2006, plaintiff was medically released and returned to full duty work as of March 1, 2006. After she returned to full duty ambulance work, plaintiff periodically experienced tingling and numbness in her right arm, into her hand as well as pain in her right shoulder. Plaintiff's testimony in this regard was corroborated by the testimony of paramedic Mark Harris and paramedic Laura Smith, who worked with plaintiff during the period from *Page 7 
March through May 2006. Plaintiff's testimony in this regard is also corroborated by the proffered testimony of Ms Janet Welch, which was accepted by defendants.
14. Plaintiff's symptoms in March, April and early May 2006 were not as severe as her symptoms immediately following her January 27, 2006 injury. Accordingly, plaintiff did not seek medical attention, and instead treated her symptoms with over-the-counter medications.
15. During the period of March to May 2006, plaintiff's symptoms grew progressively worse and by the end of May 2006, she was experiencing significant pain in her right shoulder and upper arm, as well as numbness in her right arm and hand.
16. Due to her worsening symptoms, plaintiff returned to PrimeCare on June 3, 2006. Following an examination, plaintiff was medically excused from work. An MRI was taken on June 12, 2006, which revealed broad based disc bulges at C4-5 and C5-6, and a broad based protrusion at C6-7. Thereafter, plaintiff was referred to Dr. William Palmer, Jr.
17. Prior to her January 27, 2006 injury by accident, plaintiff had never experienced problems with or injuries to her neck, right arm, hand or shoulder. Additionally, during the period of March 1 through June 3, 2006, plaintiff experienced no new injury to her neck, right arm, hand or shoulder.
18. Subsequent to June 3, 2006, plaintiff did not return to work for defendant-employer. Although the time sheet for the week of June 3, 2006, indicates plaintiff received some regular pay for June 6 and 7 June 2006, the credible evidence of record is that plaintiff in fact did not work on those dates.
19. After plaintiff was medically excused from work on June 3, 2006, defendants did not provide indemnity compensation and instead again began paying plaintiff what defendants viewed as her full salary by utilizing her remaining accrued sick, vacation, and holiday leave. *Page 8 
On June 14, 2006, defendant-employer informed plaintiff that if she were not able to return to full duty work by the time her accrued leave was exhausted, she would be terminated.
20. On June 21, 2006, plaintiff was terminated by defendant-employer due to absenteeism. Based upon the credible evidence, the Full Commission finds that plaintiff's absences from work since January 2006 had been almost entirely caused by her work-related injury.
21. On June 23, 2006, plaintiff was examined by Dr. Palmer, after which Dr. Palmer opined her condition was a continuation of and related to her January 27, 2006 injury by accident. At the time of this initial examination of plaintiff, Dr. Palmer consulted with, Dr. Bell, a neurosurgeon. After this consultation, which included the review of plaintiff's MRI results, it was concluded that plaintiff would benefit from surgery to her neck.
22. During his deposition, Dr. Palmer reiterated his opinion that the conditions experienced by plaintiff for which he examined her, including the bulging and protruding discs in her neck were causally related to her January 27, 2006 injury. Regarding plaintiff's return to full duty work in March 2006, Dr. Palmer opined that it was typical of patients with this type of injury to experience an aggravation of their initial condition upon returning to their labor-intensive work. Dr. Palmer further opined that the nature of the symptoms experienced by plaintiff on January 27, 2006, particularly the tingling and numbness down her right arm, were consistent with protruding and bulging discs in the neck and cervical radiculopathy.
23. Mr. Ken Bush, the Physician's Assistant who provided most of plaintiff's treatment at PrimeCare, opined that the symptoms experienced by plaintiff, including the tingling and numbness down her right arm and into her hand and fingers were neurological problems from inflammation, and that these symptoms originated from her January 27, 2006 injury. *Page 9 
24. The surveillance videos do not show plaintiff engaging in any strenuous activities with her right arm and hand. In particular, video taken during the paramedic lab at Forsyth Tech showed no activities by Plaintiff that involved strenuous or significant activities with her right arm and hand.
25. Since June 3, 2006, plaintiff has continued to experience pain, tingling, and numbness in her right shoulder, arm, and hands. These symptoms are aggravated when plaintiff attempts to engage in physical activities, such as lifting any significant weight and her numbness often occurs as she attempts to drive a car. As a result of these symptoms, plaintiff has difficulties in performing daily life activities, which has prevented her from returning to work for defendant-employer as a paramedic.
26. Plaintiff has made reasonable and substantial efforts to obtain employment subsequent to June 3, 2006. At the hearing before the Deputy Commissioner, plaintiff presented a list of twenty-eight (28) employers to which she had submitted employment applications without having obtained employment. Plaintiff further testified that additional records of her job search effort were lost when her home computer disk drive malfunctioned.
27. On January 3, 2007, plaintiff obtained a job as a lab technician for a paramedic lab as a part of the paramedic program at Forsyth Tech. Based upon the credible evidence of record the Full Commission finds that the limited wages plaintiff was able to earn while working in this time-limited position are not indicative of a true wage earning capacity.
28. As the direct and natural result of and causally related to her January 27, 2006 injury by accident, plaintiff sustained injuries to right shoulder, arm and hand as well as her neck, resulting in cervical radiculopathy and tingling and numbness down her right shoulder, arm and hand, with her cervical condition necessitating surgery as recommended by Dr. Palmer. *Page 10 
29. Based upon the medical and vocational evidence of record, and her January 27, 2006 injury by accident, plaintiff has been unable to earn any wages in her former position with defendant-employer or in any other position for the periods of January 28, 2006, to February 6, 2006, and from June 4, 2006, through the present and continuing.
30. Defendant-employer's use of plaintiff's accrued leave time from which to pay her what it viewed as her full, regular salary during the period of January 28, 2007, until March 1, 2006 was in violation of the Act.
31. Based upon the medical and vocational evidence of record, and her January 27, 2006 injury by accident, plaintiff was only able to earn limited wages during the period of January 28, 2006, to March 1, 2006. Because defendants have been able to only provide time sheets as opposed to payroll records, the amount of temporary partial disability compensation to which plaintiff is entitled can be calculated from the time sheets and utilizing her hourly wage to calculate the gross pay that she was entitled to, without credit for her leave time. The amounts of partial disability are shown by the following table, which shows that she is entitled to a total amount of partial disability for this period of $1,587.77.
Week Of Hours Pay Difference TPD owed
1/28/06 2 $20.18 $766.67 $511.11
2/4/06 28.5 $287.56 $499.29 $332.86
2/11/06 42.25 $437.65 $349.20 $232.80
2/18/06 42.5 $441.44 $345.41 $230.27
2/25/06 36.25 $365.76 $421.09 $280.73

32. Plaintiff received unemployment benefits at the rate of $367.00 per week for a period of fourteen (14) weeks.
33. Defendant-employer's time sheets are prepared by supervisors or administrative staff and its employees have no involvement in their preparation. The employees are only *Page 11 
presented with the time sheets when they are due, and sign the sheets at that time. Because plaintiff did not return to work for defendant-employer subsequent to June 3, 2006, she did not sign the time sheets covering the last four weeks of her employment.
34. The first method outlined in N.C. Gen. Stat. § 97-2(5) for calculating plaintiff's average weekly wage is inapplicable in this case as she worked for defendant-employer less than fifty-two (52) weeks prior to her injury by accident on January 27, 2006. Further, none of the other first four methods outlined in the Act will result in a fair calculation of plaintiff's average weekly wage.
35. Based on the exceptional circumstances of this case, Full Commission finds that the fifth method outlined in N.C. Gen. Stat. § 97-2(5) is the only method which is fair and which would result in a calculation of plaintiff's average weekly wage which most nearly approximates the amount of wages she would be earning were it not for her injury. The Full Commission finds that the calculation of plaintiff's average weekly wage should be reflective of the fact that she had received her EMT-P certification, that her hourly rate had increased to $10.09 in September 2005 and that she and defendant-employer understood that when she received her formal certification from the State, she would continue to be paid at that rate.
36. Utilizing plaintiff's post-certification hourly wage of $10.09 and the fifth method as outlined in the Act, plaintiff's applicable average weekly wage in this case is $786.85, which yields a compensation rate of $524.57.
37. Based upon a review of the record in this matter, and in consideration of defendants' failure to admit or deny plaintiff's claim by a Form 60, the Full Commission concludes that the defendants' actions in and defense of this matter were unreasonable and indicative of stubborn, unfounded litigiousness and, thus, warrants an award of attorney's fees. *Page 12 
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer on January 27, 2006. N.C. Gen. Stat. § 97-2(6).
2. There is insufficient evidence of record upon which to conclude that the Parsons presumption is applicable in this case given that no Form 60 or other form agreement was filed and given the nature of plaintiff's initial injury reports and the ultimate focus of this matter, her cervical condition. Perez v. AmericanAirlines/AMR Corp., 174 N.C.App. 128, 620 S.E.2d 288 (2005);Parsons v. Pantry, Inc.,126 N.C.App. 540, 485 S.E.2d 867 (1997).
3. As the direct and natural result of and causally related to her January 27, 2006 injury by accident, plaintiff sustained injuries to right shoulder, arm and hand as well as her neck, resulting in cervical radiculopathy and tingling and numbness down her right shoulder, arm and hand, with her cervical condition necessitating surgery as recommended by Dr. Palmer. N.C. Gen. Stat. § 97-2(6)
4. Plaintiff obtained employment as a lab technician for a paramedic lab as a part of the paramedic program at Forsyth Tech on January 3, 2007. Based upon the credible evidence of record the Full Commission concludes that the limited wages plaintiff was able to earn while working in this time-limited position are not indicative of a true wage earning capacity. N.C. Gen. Stat. § 97-2(9).
5. The first method outlined in N.C. Gen. Stat. § 97-2(5) for calculating plaintiff's is inapplicable in this case as she worked for defendant-employer less than fifty-two (52) weeks *Page 13 
prior to her injury by accident on 27 January 2006. Further, none of the other first four methods outlined in the Act will result in a fair calculation of plaintiff's average weekly wage. N.C. Gen. Stat. § 97-2(5).
6. Based on the exceptional circumstances of this case, the Full Commission concludes that the fifth method outlined in N.C. Gen. Stat. § 97-2(5) is the only method which is fair and which would result in a calculation of plaintiff's average weekly wage that most nearly approximates the amount of wages she would be earning were it not for her injury. Id. The Full Commission concludes that the calculation of plaintiff's average weekly wage should be reflective of the fact that she had received her EMT-P certification, that her hourly rate had increased to $10.09 in September 2005, and that plaintiff and defendant-employer understood that when she received her formal certification from the State, she would continue to be paid at that rate. Id.
Utilizing plaintiff's post-certification hourly wage of $10.09 and the fifth method as outlined in the Act, plaintiff's applicable average weekly wage in this case is $786.85, which yields a weekly compensation rate of $524.57. Id.
7. Plaintiff is entitled to have defendants pay to her temporary total disability compensation at the weekly rate of $524.57 for the periods of January 28, 2006, to February 6, 2006, and from June 4, 2006, through the present and continuing until such time as she returns to suitable employment, or further Order of the Commission. N.C. Gen. Stat. § 97-29.
8. Plaintiff is entitled to have defendants pay to her temporary partial disability compensation for the period of January 28, 2006, to March 1, 2006, in the amount of $1,587.77.
9. Plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, including the surgery recommended by Dr. Palmer, who is hereby *Page 14 
approved as plaintiff's primary treating physician. N.C. Gen. Stat. §§ 97-2(19); 97-25; and 97-25.1.
10. Defendant-employer's use of plaintiff's accrued leave time from which to pay her what it viewed as her full, regular salary during the period of January 28, 2007, until March 1, 2006 was in violation of the Act. See, e.g., Estes v. North Carolina StateUniversity, 102 N.C.App. 52, 401 S.E.2d 384 (1991);Christopher v. Cherry Hospital,145 N.C.App. 427, 550 S.E.2d 256 (2001). Accordingly, defendants are not entitled to a credit for these amounts. Id.; N.C. Gen. Stat. § 97-42.
11. Defendants are entitled to a credit for the fourteen (14) weeks of unemployment benefits at the rate of $367.00 per week that plaintiff received. N.C. Gen. Stat. § 97-42.1. In addition, defendants are entitled to a credit for any indemnity compensation paid to plaintiff beyond that which is awarded herein or that was otherwise not due and payable under the Workers' Compensation Act. N.C. Gen. Stat. § 97-42.
12. Based upon a review of the record in this matter, and in consideration of defendants' failure to admit or deny plaintiff's claim by a Form 60, the Full Commission concludes that the defendants' actions in and defense of this matter were unreasonable and indicative of stubborn, unfounded litigiousness and, thus, plaintiff is entitled to the award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
13. Because defendants appealed the Deputy Commissioner's award of benefits to plaintiff, and because such award is affirmed by the Full Commission as provided herein, the Full Commission concludes that plaintiff is additionally entitled to the award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.
 *********** *Page 15 
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the weekly rate of $524.57 for the periods of January 28, 2006, to February 6, 2006, and from June 4, 2006, through the present and continuing until such time as she returns to suitable employment, or further Order of the Commission. This compensation is subject to the credit provided to defendants herein. Compensation that has accrued shall be paid to plaintiff in a lump sum.
2. Defendants shall pay to plaintiff temporary partial disability compensation for the period of January 28, 2006, to March 1, 2006, in the amount of $1,587.77. This compensation shall be paid to plaintiff in a lump sum, and is subject to the credit provided to defendants herein.
3. Defendants shall pay for all related medical expenses incurred or to be incurred, including the surgery recommended by Dr. Palmer, who is hereby approved as plaintiff's primary treating physician.
4. Defendants shall receive a credit for the fourteen (14) weeks of unemployment benefits at the rate of $367.00 per week that plaintiff received. In addition, defendants shall receive a credit for any indemnity compensation paid to plaintiff beyond that which is awarded herein or that was otherwise not due and payable under the Workers' Compensation Act.
5. Defendants shall pay directly to plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to plaintiff herein; however, defendant SHALL NOT deduct this fee from the compensation awarded to plaintiff. Rather, the twenty-five percent (25%) reasonable attorney's fee shall be taxed as a cost to *Page 16 
defendants pursuant to N.C. Gen. Stat. § 97-88.1. The portion of this fee that is based upon compensation that has accrued shall be paid to plaintiff's counsel in a lump sum; thereafter, defendants shall pay monthly to plaintiff's counsel an amount equaling one week of plaintiff's weekly indemnity compensation.
6. Defendants shall reimburse plaintiff for the cost of this appeal pursuant to N.C. Gen. Stat. § 97-88. Plaintiff's counsel is directed to submit to the Full Commission an affidavit as to the fees and costs of defending this appeal before the Full Commission.
7. Defendants shall pay the costs.
This 27th day of February 2008.
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER